UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                     Plaintiff,                          DECISION & ORDER and
                                                         REPORT & RECOMMENDATION

          v.                                             10-CR-6205CJS

BETHLYN FELIX, ALLAN SNYDER,
ALLEN SNYDER and MICHAEL WELCH,

                     Defendants.

_____

## PRELIMINARY STATEMENT

          By Order of Hon. Charles J. Siragusa, United States District Judge, dated October

18, 2010, all pretrial matters in the above-captioned case have been referred to this Court

pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 2).

          On October 5, 2010, the grand jury returned an eight-count indictment charging

defendants Bethlyn Felix, Allen Snyder, Allan Snyder and Michael Welch with conspiracy to

manufacture 1,000 or more marijuana plants and to possess with intent to distribute and to

distribute that marijuana, in violation of 21 U.S.C. § 846.  (Docket # 1).[1]  The defendants are also

charged with substantive crimes related to the manufacture and distribution of marijuana.  (*Id*.).

In addition, Felix and Allan Snyder are charged with possession of a firearm in furtherance of a

drug trafficking crime, in violation of 18 U.S.C. § 924(c).

_____

[1] Allen Snyder is the father of Allan Snyder and Michael Welch.  Allan Snyder and Bethlyn Felix are
married.

Currently pending before the Court are motions by defendants Michael Welch ("Welch"), Allan Snyder ("Snyder Jr.") and Bethlyn Felix ("Felix") to suppress evidence of telephone communications intercepted by wiretaps.  (Docket ## 51, 82, 87).[2]  Felix also seeks to suppress evidence seized from her residence at 1154 Finches Corners Road in Martville, New York.  (Docket # 87).  Finally, defendant Allen Snyder ("Snyder Sr.") seeks to suppress tangible evidence seized from his residence at 13770 Savannah Spring Lake Road in Savannah, New York and to dismiss the indictment on the ground that it is duplicitous.  (Docket # 48).[3]

For the reasons discussed below, I recommend that the district court deny the defendants' motions.

## FACTUAL BACKGROUND

### I.  Wiretap Applications

#### A.  March 15, 2010 Wiretaps

On March 15, 2010, Wayne County Court Judge John B. Nesbitt signed two eavesdropping warrants to intercept electronic communications from over telephones being used

---

[2]  Defendants filed omnibus motions.  Specifically, Michael Welch also sought, *inter alia*, an audibility hearing, a bill of particulars, a conspiracy hearing, *Brady* and *Jencks* material, severance, discovery, identification of informants and preservation of rough notes.  (Docket # 51).  Allan Snyder's omnibus motion sought, *inter alia*, an audibility hearing, a bill of particulars, *Brady* and *Jencks* material, rulings under Federal Rules of Evidence 404, 608 and 609, discovery, identification of informants, preservation of rough notes and disclosure of grand jury minutes. (Docket # 82).  Bethlyn Felix sought, *inter alia*, an audibility hearing, a bill of particulars, *Brady* and *Jencks* material, rulings under Federal Rules of Evidence 404, 608 and 609, severance, discovery, identification of informants and preservation of rough notes.  (Docket # 87).  Each of the above-referenced motions was decided by the undersigned or resolved by the parties in open court on February 8, May 3 and June 23, 2011, respectively. (Docket ## 62, 85, 100).

[3]  Allen Snyder's omnibus motion also sought, *inter alia*, a bill of particulars, *Brady* and *Jencks* material, discovery, rulings under Federal Rules of Evidence 404, 608 and 609, identification of informants and severance. (Docket # 48).  Each of those motions was decided by the undersigned or resolved by the parties in open court on February 8, 2011.  (Docket # 61).

by Snyder Jr.: (315) 945-4286 and (315) 414-7719 (the "target numbers"). New York State Police Investigator Matthew P. Butts ("Butts") submitted an identical affidavit in support of his application for both warrants. (Docket # 58, Exs. 2, 3 ("Butts Aff. 1")). The following is a summary of the facts set forth in Butts's affidavit.

Butts affirmed that there was probable cause to believe that Snyder Jr. and his wife, Bethlyn Felix, were conspiring to sell marijuana. (Butts Aff. 1 at ¶ 13). According to Butts, the purpose of the investigation into Snyder Jr. and Felix's activities was to identify their suppliers, co-conspirators and customers and the location where they stored the marijuana. (*Id.* at ¶ 15). In addition, the investigation sought to "identify, disable and dismantle the distribution network." (*Id.* at ¶ 31).

According to Butts, in July 2007 a search warrant was executed at Snyder Jr.'s home at 1154 Finches Corners Road in Martville, New York, and marijuana plants and cultivation equipment were seized, along with thirty guns and other drug paraphernalia. (*Id.* at ¶ 17).

Butts also described information provided from a confidential source ("CS") who had been cooperating with a drug task force, comprised of members of the Town of Macedon Police Department, the Wayne County Narcotics Enforcement Team and the New York State Police (the "task force"). According to CS, he had known Snyder Jr. for five years and had observed Snyder Jr. sell marijuana during 2008 and 2009; CS had seen multiple pounds of marijuana in the master bedroom of Snyder Jr.'s home. (*Id.* at ¶ 20). CS stated that Snyder Jr. sells in "larger quantities" and that Felix sells marijuana for Snyder Jr. when he is not home.

(*Id*.).  CS reported that Snyder Jr. admitted that he had been dealing marijuana for over ten years. (*Id*.).

Acting at the behest of the task force, CS made five controlled purchases of marijuana from Snyder Jr. during 2009 and 2010.  CS arranged the purchases by contacting Snyder Jr. over the target numbers.  (*Id*.).  Specifically, on December 14, 2009, CS sent a text message to (315) 414-7719 to arrange a purchase of eight ounces of marijuana from Snyder Jr. (*Id*. at ¶ 21).  CS then traveled to Snyder Jr.'s home.  Although Snyder Jr. was not home, CS purchased the marijuana from Felix for $1,500.  (*Id*.).

On January 4, 2010, CS again contacted Snyder Jr. at (315) 414-7719 via text message and arranged another purchase.  (*Id*. at ¶ 22).  Again, Snyder Jr. was not home when CS arrived.  (*Id*.).  CS gave Felix $1,500 for eight ounces of marijuana.  (*Id*.)  Felix informed him that she could sell him only five ounces, but that Snyder Jr. would deliver the additional three ounces the next day.  (*Id*.).  On January 5, 2010, CS sent a text message to Snyder Jr. at (315) 945-4286 and arranged to pick up the remaining quantity.  (*Id*. at ¶ 23).  When CS arrived at Snyder Jr.'s home, Snyder Jr. gave CS the remaining three ounces of marijuana.  (*Id*.).  At that time, CS told Snyder Jr. that he wanted to buy a pound of marijuana the next time, which Snyder Jr. agreed to sell him for $3,000.  (*Id*.).

On January 30, 2010, CS contacted Snyder Jr. at (315) 945-4286 and indicated that he wanted to purchase marijuana.  (*Id*. at ¶ 24).  They arranged for Snyder Jr. to deliver eight ounces to CS at CS's residence in Wolcott, New York.  (*Id*.).  When Snyder Jr. arrived with the delivery, CS asked Snyder Jr. whether (315) 945-4286 was the correct phone number on which to

contact him.  (*Id*.).  Snyder Jr. responded that CS should only send text messages to that number, but should never call him.  (*Id*.).

On February 22, 2010, CS sent Snyder Jr. a text message at (315) 945-4286 to arrange another purchase.  (*Id*. at ¶ 26).  CS then traveled to Snyder Jr.'s home and purchased eight ounces of marijuana from Snyder Jr. and Felix.  (*Id*.).  Snyder Jr. asked CS why it took him so long to sell a half-pound of marijuana and told CS that he "needed to step up his 'game' a bit." (*Id*.).  Snyder Jr. also informed CS that an individual named "Pugsley" was selling marijuana for him from the Wolcott Hotel in Wolcott, New York.  (*Id*.).

### B. <u>March 25, 2010</u>

On March 25, 2010, Butts applied for a third eavesdropping warrant for telephone number (315) 564-5246, which was being used by both Snyder Jr. and Felix at 1154 Finches Corners Road.  (Docket # 58, Ex. 4 ("Butts Aff. 2")).  In his affidavit, Butts identified the same goals for the investigation as he had identified in the previous warrant applications.  He also included transcripts of conversations that had been intercepted pursuant to the earlier wiretap orders.  (Butts Aff. 2 at ¶¶ 15-16).

Butts's affidavit included a transcript of a March 17, 2010 conversation between Snyder Jr. and an individual identified as Lance Sanford ("Sanford").  During the conversation, Snyder Jr. agreed to sell Sanford one and one-quarter pounds of marijuana for $3,600.  (*Id*. at ¶ 17).  Sanford agreed to contact Snyder Jr. when he had the funds for the purchase.  (*Id*.).

The Butts affidavit also included a transcript of a lengthy conversation between Snyder Jr. and an unidentified individual on March 17, 2010, during which Snyder Jr. discussed

selling marijuana and stated that his price was the same regardless of the identity of the buyer. (*Id*. at ¶ 19).

The affidavit further summarized a series of telephone calls intercepted on March 21, 2010.  On that date, Snyder Jr. telephoned Sanford and asked whether he planned to pick up the marijuana he had agreed to purchase a few days earlier.  (*Id*. at ¶ 21).  Sanford advised Snyder Jr. that he could get "there" around 7:30 p.m.  (*Id*. at ¶ 22).  At 7:38 p.m., Snyder Jr. telephoned (315) 564-5246, a telephone number registered to Felix, and asked Felix whether Sanford had stopped by yet.  (*Id*. at ¶ 25).  Felix replied that he had not.  (*Id*.).  At 7:48 p.m., Snyder Jr. again telephoned Felix at (315) 564-5246, and Felix informed him that Sanford still had not arrived. (*Id*. at ¶ 26).  At 7:49 p.m., Snyder Jr. telephoned Sanford, confirmed Sanford's plans to come to his house and told Sanford that he did not want to leave the marijuana "layin' around."  (*Id*. at ¶ 27).  Sanford responded that he was pulling into Snyder Jr.'s residence.  (*Id*.).

## II.  <u>Search Warrant for 13770 Savannah Spring Lake Road</u>

On April 12, 2010, Judge Nesbitt issued a warrant to search 13770 Savannah Spring Lake Road in Savannah, New York, Snyder Sr.'s residence.  (Docket # 48-1 ("Colella Aff.")).  The supporting affidavit of Chief John P. Colella of the Macedon Police Department incorporated by reference the wiretap affidavits discussed above.  (Colella Aff. at 105-106).

Colella's affidavit included transcripts of various telephone calls and text messages intercepted pursuant to the three wiretap warrants.  During one such telephone call on March 20, 2010, Snyder Sr. asked Snyder Jr. if he planned to come over.  (Colella Aff. at 106). Snyder Jr. responded, "Do I need to . . . ?"  (*Id*.).  Snyder Sr. replied that he "imag[ined] so."

(*Id*.).  Colella opined, based on his training and experience, that Snyder Sr. wanted his son to come to his house to take care of the marijuana plants.  (*Id*. at 106-107).

On March 22, 2010, at 5:43 p.m., a telephone call between Snyder Jr. and his brother Michael Welch was intercepted.  During that conversation, Welch told Snyder Jr. that he would go to "Savannah" "first thing in the morning" to "raise it up."  (*Id*. at 107).  Colella opined that Welch meant that he planned to go to Snyder Sr.'s house to raise the growing lights for the marijuana plants.  (*Id*.).  A few hours later, Welch and Snyder Jr. exchanged text messages in which, in Colella's opinion, Snyder Jr. told Welch that he wanted the growing lights for the marijuana plants raised one foot.  (*Id*. at 107-08).  In a later 8:34 p.m. telephone call, the brothers discussed going over to "dad's," and Snyder Jr. told Welch to "get that done."  (*Id*. at 108-09).  Welch then sent a text message to Snyder Jr. at 9:29 p.m. to notify him that he had arrived at Snyder Sr.'s home.  (*Id*. at 109).  At 10:54 p.m., Welch sent Snyder Jr. another text message, "All done.  U need 2 get more bulbs.  We used them all.  We replaced about 15."  (*Id*. at 110).  Colella interpreted the text message to mean that Welch had replaced the bulbs in the growing lights at Snyder Sr.'s house and that Snyder Jr. needed to buy more bulbs.  (*Id*.).  At the time of the text message, law enforcement surveillance confirmed that Welch's vehicle was parked in the driveway of 13770 Savannah Spring Lake Road.  (*Id*.).

Four days later, on March 26, 2010 at 7:59 p.m., Welch told Snyder Jr. that he would be going over to "dad's" in the morning.  (*Id*. at 110-12).  Snyder Jr. told Welch that "it looked . . . dry as fuck," and Welch responded that "he's keeping it so fuckin' hot in there."  (*Id*. at 111).

The following day, on March 27, 2010, Snyder Jr. and Welch exchanged text messages agreeing to meet at "dad's."  (*Id*.).

On March 28, 2010, at 4:22 p.m., Snyder Jr. told Welch that he had turned on the timers, and Welch replied that some bulbs needed to be replaced.  (*Id*. at 113-14).  Welch stated that he would replace the bulbs and check on the water the next day.  (*Id*. at 114).  Also on that day, Snyder Jr. invited a woman to accompany him to his father's house.  (*Id*. at 115-16).  Snyder Jr. was observed at 13770 Savannah Spring Lake Road a short time later.  (*Id*. at 116).

## DISCUSSION

### I.  Defendants' Motions to Suppress Wiretap Evidence

#### A.  Standing

18 U.S.C. § 2510(11) defines an "aggrieved person" as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed."  18 U.S.C. § 2510(11).  According to the Second Circuit, a person "who has had his conversations intercepted during the wiretap" is an aggrieved person.  *United States v. Fury*, 554 F.2d 522, 525 (2d Cir.), *cert. denied*, 433 U.S. 910 (1977).  Under 18 U.S.C. § 2518(10) an aggrieved person may "move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that (i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval."  18 U.S.C. § 2518(10)(a).

The record plainly demonstrates that Snyder Jr. and Felix have standing to suppress telephone conversations intercepted over their telephones.  Because the record also contains evidence that telephone calls to and from Welch were intercepted over Snyder Jr.'s telephone, he too has standing to move to suppress those conversations.

## B.  Other Investigative Procedures

Snyder Jr., Felix and Welch seek suppression of the intercepted communications on the grounds that the supporting affidavits offered by Butts failed to demonstrate that before resorting to the use of wiretaps, traditional investigative procedures had been attempted and had proved unsuccessful.  In other words, according to defendants, Butts's affidavits failed to justify the need for wiretap interception.  (Docket ## 51 at 55; 82 at 44; 87 at 14).

An application for a wiretap authorization must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(1)(c).  A judge may approve a wiretap application only after determining that such a showing has been made.  18 U.S.C. § 2518(3)(c).  This requirement "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime."  *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974).  In other words, the government need not "exhaust all conceivable investigative techniques before resorting to electronic surveillance," but must resort to telephonic surveillance only "when it is necessary to assist in law enforcement."  *United States v. Concepcion*, 579 F.3d 214, 218 (2d Cir. 2009); *United States v. Funderburk*, 492 F. Supp. 2d 223, 242 (W.D.N.Y. 2007) (the "other investigative procedures" requirement is not intended to turn electronic surveillance into a "tool

of last resort"). "'Merely because a normal investigative technique is theoretically possible, it does not follow that is likely' to succeed." *United States v. Crosby*, 2010 WL 4703615, *3 (W.D.N.Y. 2010) (quoting *United States v. Torres*, 901 F.2d 205, 231-32 (2d Cir. 1990), *abrograted on other grounds as recognized by United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010)). The wiretap application needs only to inform the issuing court "of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." *United States v. Concepcion*, 579 F.3d at 218 (internal quotation omitted).

In narcotics conspiracy investigations, this requirement may be satisfied by "describing how traditional investigative techniques had failed to provide more than a 'limited picture' of . . . [the] narcotics organization." *United States v. Valdez*, 1991 WL 41590, *2 (S.D.N.Y.) (quoting *United States v. Torres*, 901 F.2d at 232), *aff'd* 952 F.2d 394 (2d Cir. 1991). Moreover, wiretaps are particularly appropriate when "the telephone is routinely relied on to conduct the criminal enterprise under investigation." *United States v. Young*, 822 F.2d 1234, 1237 (2d Cir. 1987) (internal quotation omitted).

Moreover, this Court's review of the issuing court's determination is not *de novo*; rather, the reviewing court must determine only whether "'the facts set forth in the application were minimally adequate to support the determination that was made.'" *Concepcion*, 579 F.3d at 218 (quoting *United States v. Miller*, 116 F.3d 641, 663 (2d Cir. 1997)) (agent's assertion that surveillance had been conducted unsuccessfully on numerous occasions was "minimally adequate"); *see also United States v. Miranda*, 1993 WL 410507, *2 (S.D.N.Y. 1993) (issuing court's determination concerning sufficiency of normal investigative techniques is entitled to

"substantial deference"). The reviewing court must test the application in a "practical and commonsense fashion." *Concepcion*, 579 F.3d at 218.

Applying a practical, commonsense and deferential review to the instant case, I find that Butts's affidavits were at least minimally adequate to support a finding that further use of traditional investigative techniques appeared unlikely to succeed. In his affidavits, Butts identified the purpose of the investigation as the identification of Snyder Jr. and Felix's suppliers, co-conspirators and customers, as well as their marijuana storage locations. (Butts Aff. 1 at ¶ 15). He further stated that "[t]he goals of this investigation are not limited to the arrest of just [Snyder Jr. or Felix] or the seizure of a single storehouse or cache of [m]ari[j]uana," but include "identify[ing], disabl[ing] and dismantl[ing] the distribution network." (*Id*. at ¶ 31). Butts's affidavits also articulated his belief that "no substantial quantity of [m]arijuana is originally produced in Wayne or Cayuga Counties," but must be imported from other distant states or countries. (*Id*. at ¶ 4).

Butts further affirmed that although "conventional investigative means" had produced evidence of marijuana trafficking by Snyder Jr. and Felix, those investigative techniques had not accomplished and were not likely to accomplish the objectives of the investigation. (*Id*. at ¶ 33). For example, Butts affirmed that although the task force had succeeded in making controlled purchases of marijuana from Snyder Jr., none of the transactions had revealed his supplier or storage location. (*Id*. at ¶ 34). Butts stated that he was not aware of any other cooperating informants who were capable of ascertaining that information. (*Id*. at ¶¶ 35-36). Butts further affirmed that the task force had no informant capable of introducing an undercover officer to Snyder Jr. (*Id*. at ¶ 37).

11

Butts's affidavit also described the difficulties the investigative team had encountered in attempting to conduct surveillance of Snyder Jr.  As Butts explained, the rural location of Snyder Jr.'s home made "stationary" surveillance risky, in part because Snyder Jr.'s home was equipped with several motion-activated lights and because, on one occasion, neighbors had alerted Snyder Jr. to surveillance activities.  (*Id*. at ¶¶ 38-42).  In addition, "moving" surveillance had also proved difficult because Snyder Jr. frequently drove in an erratic and elusive manner.  (*Id*. at ¶ 39).  Indeed, Butts affirmed that CS had reported that Snyder Jr. was "very aware of [l]aw [e]nforcement attempts to infiltrate his distribution network."  (*Id*. at ¶ 38).

Finally, Butts also described the likely ineffectiveness of search warrants, interviews, toll analysis and a grand jury investigation to accomplish the goals of the investigation, particularly to reveal the full scope of the organization and the identification of the other conspirators.  (*Id*. at ¶¶ 43-50).

In support of her suppression motion, Felix identifies alleged inconsistencies in Butts's affidavit that she contends undermine Butts's assertion that ordinary investigative techniques would not succeed in accomplishing the investigation's goals.  Specifically, Felix contends that the fact that Snyder Jr. had been caught growing marijuana in 2007 is inconsistent with Butts's asserted belief that Snyder Jr. was importing marijuana.  (Docket # 87 at 16-17).  Further, Felix challenges Butts's claim that an informant would be unlikely to gather information from Snyder Jr. about his suppliers or customers, considering the fact that Snyder Jr. told CS that "Pugsley" was selling marijuana for him from the Wolcott Hotel.  (*Id*. at 17-18).  Felix also contends that Butts's affidavit shows that surveillance was in fact used successfully numerous times, including to monitor CS's controlled purchases.  (*Id*.).

Finally, Felix asserts that CS's true identity is Sanford, the person whose conversations with Snyder Jr. were intercepted and recounted in the March 25, 2010 application. (*Id*. at 21-22). Butts's failure to disclose that fact, Felix maintains, constitutes a material misstatement designed to mislead the issuing magistrate and requests an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

Felix is of course correct that the task force could have employed additional procedures – such as, additional surveillance or inquiries by CS – to attempt to identify Snyder Jr.'s suppliers, co-conspirators and customers. However, Butts's affidavit adequately explained why those methods risked jeopardizing the investigation and were unlikely to succeed. Although CS had known Snyder Jr. for five years, he had never learned the identity of his supplier or the location where he stored his marijuana; thus, it was reasonable for Butts to assume that Snyder Jr. was unwilling to share that information with CS. Further, Butts identified several reasons why surveillance was risky, particularly because CS had informed him that Snyder Jr. was aware of law enforcement's attempts to penetrate his organization. For these reasons, and applying the legal standards described above, I reject Felix's arguments that the wiretap orders are invalid because law enforcement did not exhaust other traditional investigative techniques. *See Concepcion*, 579 F.3d at 218, 219 (law enforcement need not exhaust "all conceivable investigative techniques"; fact that "leads could have been better leveraged before resorting to a wiretap" does not mandate suppression where affidavit was otherwise "minimally adequate"); *United States v. Mitchell*, 2010 WL 55927, *5 (W.D.N.Y. 2010) (affidavits were sufficient where they asserted that informants and surveillance provided only "a limited picture of the drug distribution network").

Finally, Felix does not provide a basis for her belief that CS and Sanford are the same person; rather, that assertion is made by her attorney. *Franks v. Delaware*, 438 U.S. at 171 (to warrant an evidentiary hearing, allegations of deliberate falsehood "must be accompanied by an offer of proof"). Further, even if true, the omission of the identity of CS is immaterial to the determination whether there was probable cause to believe that Snyder Jr. was utilizing Felix's telephone number to coordinate drug sales. *Id.* at 171-72 (no hearing required where probable cause exists even after setting aside allegedly false information). Accordingly, Felix's motion for a *Franks* hearing is denied.[4]

In sum, this Court finds that Butts's affidavits sufficiently identified the traditional investigative techniques that had been utilized and adequately informed the issuing court why other techniques were unlikely to achieve the aims of the investigation. Accordingly, I find that the factual recitations set forth in Butts's affidavits were minimally adequate to support the wiretap orders. *See Concepcion*, 579 F.3d at 219. Defendants' motions to suppress the wiretap communications based upon the alleged failure to demonstrate the futility of other investigative techniques should therefore be denied.

## C. **Probable Cause**

I turn next to Welch's challenge that the warrants were not supported by probable cause to believe that the communications to be intercepted would reveal evidence of criminal offenses. (Docket # 51 at 51).

Pursuant to 18 U.S.C. § 2518(3), before issuing a wiretap order, a judge must determine:

---

[4] In addition, I also deny Welch's and Snyder Jr.'s motions for *Franks* hearings. (Docket ## 51, 82).

14

> [1] that there is probable cause to believe that a crime has been, is
> being, or is about to be committed; [2] probable cause to believe
> that communications about the crime will be obtained through the
> wiretap; [3] that alternative means have been tried and failed or
> appear too dangerous or unlikely to succeed; and [4] probable
> cause that the premises to be wiretapped are being used for
> criminal purposes or are used or owned by the target of the wiretap.

*United States v. Wagner*, 989 F.2d 69, 71 (2d Cir. 1993).

The probable cause standard applicable to wiretaps is the same as that required for a traditional search warrant. *Id.* (citing *United States v. Rowell*, 903 F.2d 899, 901-02 (2d Cir. 1990); *United States v. Fury*, 554 F.2d at 530). In other words, probable cause must be determined by evaluating the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). As a reviewing court, this Court must accord "substantial deference" to the issuing court's finding of probable cause. *United States v. Wagner*, 989 F.2d at 72 (citations omitted).

Here, the March 15, 2010 and March 25, 2010 applications established ample probable cause to believe that crimes were being committing and that the interception would reveal communications about the commission of those crimes. Specifically, Butts's March 15, 2010 affidavits described in detail five controlled purchases of half-pounds of marijuana from Snyder Jr. Those sales were arranged over the telephone numbers sought to be intercepted. In addition, the March 25, 2010 affidavit described conversations in which Snyder Jr. called Felix at home to coordinate the sale of over a pound of marijuana. Accordingly, Welch's challenge must fail.[5]

---

[5] Felix has also moved to suppress the tangible evidence seized pursuant to an April 12, 2010 search warrant for her residence at 1154 Finches Corners Road as the fruit of the illegal wiretap orders. (Docket # 87 at 22). Because I find that the wiretap orders were sufficiently supported by probable cause and that law enforcement properly demonstrated the unlikely success of other investigative techniques, I recommend that her motion to suppress the April 12, 2010 search warrant as the fruit of the wiretap orders be denied.

D.  **Minimization and Sealing**

Welch further moves to suppress the intercepted telephone calls on the ground that they were not minimized.  (Docket # 51 at 59).  Section 2518(5) of Title 18 provides that authorized interceptions "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception."  18 U.S.C. § 2518(5).  Moreover, as the Supreme Court has recognized:

> During the early stages of surveillance the agents may be forced to intercept all calls to establish categories of nonpertinent calls which will not be intercepted thereafter.  Interception of those same type of calls might be unreasonable later on, however, once the nonpertinent categories have been established and it is clear that this particular conversation is of that type.

*Scott v. United States*, 436 U.S. 128, 141 (1978).

Standing to challenge improper minimization requires the showing of a direct privacy interest.  *Fury*, 554 F.2d at 526; *United States v. Salas*, 2008 WL 4840872, *8 (S.D.N.Y. 2008); *United States v. Burford*, 755 F. Supp. 607, 613 (S.D.N.Y. 1991) ("[i]t is well settled law in this Circuit that to have standing to challenge improper minimization during a wiretap executed by the government, that a defendant must show a direct privacy interest").  To establish a direct privacy interest, a defendant must demonstrate a possessory or proprietary interest in the home in which the telephone is located or in the telephone itself.  *Fury*, 554 F.2d at 526; *United States v. Villegas*, 1993 WL 535013, *8 (S.D.N.Y. 1993); *United States v. Burford*, 755 F. Supp. at 613 (citing *United States v. Hinton*, 543 F.2d 1002, 1011-12 (2d Cir.), *cert. denied*, 429 U.S. 980 (1976)).  Moreover, as noted by the Second Circuit, even defendants who are named as targets of the investigation may lack standing to challenge law enforcement's minimization

16

techniques if they did not have an expectation of privacy in the residence in which the tapped telephone was located. *United States v. Ruggiero*, 928 F.2d 1289, 1303 (2d Cir.), *cert. denied sub nom.*, 502 U.S. 938 (1991); *see also United States v. Poeta*, 455 F.2d 117, 122 (2d Cir.) (finding defendant lacked standing to raise minimization challenge concerning wiretap of co-defendant's telephone), *cert. denied*, 406 U.S. 948 (1972); *United States v. Villegas*, 1993 WL 535013 at *8 (same).

In the case at bar, the intercepted phones were subscribed to or believed to be utilized by Snyder Jr. or Felix, not Welch. Moreover, Welch has not submitted an affidavit to establish that he had any expectation of privacy in any of the telephone lines. On this record, I find that Welch has failed to demonstrate a privacy interest in any of the tapped telephone lines and thus lacks standing to challenge the government's minimization of calls intercepted over those lines.

Even assuming he had standing, he has nonetheless failed to demonstrate a violation of the government's minimization obligations. Welch merely avers that "[m]any of the intercepted phone calls were personal in nature and did not . . . incorporate an illegal or improper activity for any criminal conduct much less marijuana trafficking and growing." (Docket # 51 at 59). Welch has failed to identify any particular conversations that he believes should have been minimized and were not. Thus, Welch's motion to suppress intercepted conversations based upon improper minimization should be denied.

I turn next to Welch's contention that the recordings obtained from the wiretap orders were not timely sealed. Section 2518(8)(a) of Title 18 requires that "[i]mmediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made

available to the judge issuing such order and sealed under his directions." 18 U.S.C.

§ 2518(8)(a).  Even if the sealing had been delayed, suppression is not automatic; rather,

suppression is only required where the government cannot explain the delay.  *United States v.*

*Vasconcellos*, 658 F. Supp. 2d 366, 295 (N.D.N.Y. 2009) (citing *United States v. Gallo*, 863 F.2d

185, 193 (2d Cir. 1988)).  Welch contends, without evidentiary support, that the tapes were not

timely sealed.  (Docket # 51 at 60).  Accordingly, I recommend that the district court deny

Welch's motion to suppress the wiretap evidence on the ground of untimely sealing.


### III.  Snyder Sr.'s Motion to Suppress

Next, I address Snyder Sr.'s challenge to the April 12, 2010 search warrant for

13770 Savannah Spring Lake Road on the grounds that the application failed to establish

probable cause.  (Docket # 48 at 2-11).  Specifically, Snyder Sr. argues that the intercepted

conversations between Snyder Jr. and Welch recounted in Colella's affidavit were not criminal in

nature and thus did not demonstrate probable cause to believe that marijuana would be found at

Snyder Sr.'s house.  (*Id*. at 2-9).  In addition, Snyder Sr. contends that the information contained

in the warrant application was stale.  (*Id*. at 9-11).

The Fourth Amendment to the Constitution provides that "no Warrants shall

issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the

place to be searched, and the persons or things to be seized."  U.S. CONST. amend. IV; *see also*

Fed. R. Crim. P. 41.  In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court affirmed the

"totality of the circumstances" test to determine whether a search warrant satisfies the Fourth

Amendment's probable cause requirement.  According to the court, the issuing judicial officer

18

must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. at 238.   A reviewing court's obligation is merely to determine that the issuing judge had a "'substantial basis for...conclud[ing]' that probable cause existed." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Illinois v. Gates*, 462 U.S. at 238-39) (internal quotation omitted); *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) ("a reviewing court must accord considerable deference to the probable cause determination of the issuing magistrate").   Moreover, "resolution of marginal cases should be determined by the preference to be afforded to warrants." *United States v. Smith*, 9 F.3d at 1012 (citing *Jones v. United States*, 362 U.S. 257, 270 (1960)).

Here, Colella's affidavit described conversations between Snyder Jr. and Welch that based on his training and experience, related to the care and maintenance of a marijuana grow operation.   Specifically, Snyder Jr. and Welch discussed activities at their father's house – such as "rais[ing] it up," replacing bulbs, plugging in timers, bringing buckets of water – and the fact that something at Snyder Sr.'s was "dry as fuck."   In addition, Colella's affidavit incorporated the Butts affidavits, which, as discussed above, established probable cause to believe that Snyder Jr. was involved in trafficking marijuana.   Moreover, a 2007 search warrant had revealed that Snyder Jr. had been growing marijuana in his home at that time.   Considered together, this evidence provided sufficient probable cause to believe that evidence of a marijuana conspiracy would be found at Snyder Sr.'s residence. *Fury*, 554 F.2d at 530-31 (probable cause shown where ambiguous statements could be "reasonably interpreted to indicate what the

detective interpreted them to be" when considered in context of defendant's criminal record and ongoing investigation). *See also United States v. Cancelmo*, 64 F.3d 804 (2d Cir. 1995) (observing that "drug dealers rarely speak openly about their trade" and that use of a "narcotics code" may support a probable cause finding); *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985) ("fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause").

I further reject Snyder Sr.'s contention that the information contained in the warrant application was stale.  Factors to be considered in addressing staleness challenge include "the nature of the conduct alleged to have violated the law." *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991) (quoting *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981), *cert. denied*, 458 U.S. 1110 (1982)).  "[N]arcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness." *United States v. Rowell*, 903 F.2d at 903 (quoting *United States v. Feola*, 651 F. Supp. 1068, 1090 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir.), *cert. denied*, 493 U.S. 834 (1989)).  Thus, even an eighteen-month delay between an informant's statements and a warrant application will not render the information stale. *Id*. *See also United States v. Perry*, 643 F.2d 38, 49-50 (2d Cir.) (three-year old information was not stale where warrant also included information regarding current activity), *cert. denied*, 454 U.S. 835 (1981); *United States v. Reyes*, 922 F. Supp. 818, 827 (S.D.N.Y. 1996) (information must be at least one year old to be stale).

The warrant for Snyder Jr.'s residence was signed on April 12, 2010.  The information contained in the warrant consisted of intercepted conversations occurring no more than three weeks earlier, during March 20 through March 28, 2010, in addition to the

incorporated Butts affidavits recounting events between December 2009 and February 2010.

Accordingly, I decline to find that the warrant lacked probable cause on the grounds of staleness.

In any event, Snyder Sr. has failed to offer any evidence to suggest that the searching officers did not rely upon the warrant in good faith. *See United States v. Leon*, 468 U.S. 897 (1984); *United States v. Cancelmo*, 64 F.3d at 807 (applying good faith exception to the exclusionary rule where search warrant application relied on ambiguous coded conversations). No credible evidence exists that the issuing judge was knowingly misled or wholly abandoned his judicial role. *See id.* at 923. Nor was the warrant so facially deficient or so lacking in probable cause that reliance upon it would have been unreasonable. *See id.*; *Cancelmo*, 64 F.3d at 807 (citations omitted). Accordingly, it is my recommendation that Snyder Sr.'s motion to suppress evidence seized from 13770 Savannah Spring Lake Road be denied.

## IV.   Snyder Sr.'s Motion to Dismiss Indictment for Duplicity

I turn finally to Snyder Sr.'s motion to dismiss the first count of the indictment on the basis that it is duplicitous. (Docket # 48 at 15-18). Snyder Sr. contends that the indictment improperly charges him with two separate conspiracy offenses that are joined in a single count. (*Id.*). Count I of the indictment charges that between January 2007 and April 2010, Snyder Sr., with others:

> did knowingly, willfully and unlawfully combine, conspire and
> agree together and with others, known and unknown to the Grand
> Jury, to commit the following offenses, that is, to manufacture
> 1,000 or more marijuana plants, a Schedule I controlled substance,
> and to possess with intent to distribute and to distribute marijuana,
> a Schedule I controlled substance, in violation of Title 21, United
> States Code, Sections 841(a)(1), 841(b)(1)(A) and 841(b)(1)(D).

(Docket # 1).

"An indictment is invalidly duplicitous when it joins in a single count two or more distinct and separate offenses." *United States v. Droms*, 566 F.2d 361, 363 (2d Cir. 1977); *accord United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992). A count is duplicitous only "'if a general verdict of guilty might actually conceal contrary findings as to different alleged crimes, or if an appropriate basis for sentencing is not provided.'" *United States v. Parker*, 165 F. Supp. 2d 431, 447 (W.D.N.Y. 2001) (quoting *United States v. Margiotta*, 646 F.2d 729, 732-33 (2d Cir. 1981)). *See United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980) ("the prohibition of duplicity is said to implicate a defendant's rights to notice of the charge against him, to a unanimous verdict, to appropriate sentencing and to protection against double jeopardy in a subsequent prosecution").

Snyder Sr.'s challenge to the indictment fails under settled authority. An indictment may charge a defendant with a single count of conspiracy, but allege "various means of furthering that conspiracy." *United States v. Aracri*, 968 F.2d at 1518. Thus, "acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989). *See also United States v. Jenkins*, 409 F. App'x 451, 452-53 (2d Cir. 2011) (single narcotics conspiracy may comprise both the importation, distribution and possession of illegal narcotics).

Here, Snyder Sr. and his co-defendants are charged with a single conspiracy to manufacture, possess with intent to distribute and distribute marijuana. The indictment is not duplicitous because it properly alleges a single conspiracy with multiple objectives. *United*

*States v. Murray*, 618 F.2d at 896, 898 (single count charging defendant with conspiracy to import and to distribute cocaine and marijuana was not duplicitous).  Accordingly, I recommend that the district court deny Snyder Sr.'s motion to dismiss Count One of the indictment.


## <u>CONCLUSION</u>

For the reasons discussed above, I recommend that the district court deny the motions filed by Felix, Snyder Jr. and Welch to suppress the evidence intercepted pursuant to the wiretap orders.  (Docket ## 51, 82, 87).  I further recommend that the district court deny Felix's motion to suppress evidence seized from her residence at 1154 Finches Corners Road.  (Docket # 87). Finally, I recommend that the district court deny Snyder Sr.'s motion to suppress the tangible evidence seized from his residence at 13770 Savannah Spring Lake Road and to dismiss the indictment as duplicitous.  (Docket # 48).


*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
          December   27  , 2011

23

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

      **ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

      **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[6]

      The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

      <u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u> *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

      The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>**Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**</u>

      Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

    *s/Marian W. Payson*
      MARIAN W. PAYSON
   United States Magistrate Judge

Dated: Rochester, New York
     December   27  , 2011

---

    [6] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).